United States District Court
Northern District of California

1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14
15
16
17
18
19

CHARLES DARRYL KESECKER,

           Plaintiff,

     v.

MARIN COMMUNITY COLLEGE
DISTRICT,

           Defendant.

Case No.: C-11-4048 JSC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

20
21
22
23
24
25
26
27
28

      This lawsuit asks whether a police department may force the retirement of a police officer who is found "unfit for duty" for "the near term" following a psychological exam.  Plaintiff Charles Darryl Kesecker, a former police officer for the Defendant Marin Community College District, brings this action against his former employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 1290 et seq.  Plaintiff's Amended Complaint alleges five causes of action: 1) retaliation; 2) failure to provide reasonable accommodation; 3) failure to engage in the interactive process; 4) constructive discharge; and 5) discrimination.  (Dkt. No. 1.)  Now pending before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") of his second, third, and fourth

United States District Court
Northern District of California

causes of action (Dkt. No. 46), and Defendant's Motion for Summary Judgment ("Defendant's Motion") of Plaintiff's entire Amended Complaint. (Dkt. No. 33.)  After carefully considering the evidence properly submitted by the parties, and having had the benefit of oral argument on December 20, 2012, the Court GRANTS Defendant's Motion in part, DENIES the Motion in part, and DENIES Plaintiff's Motion.

## SUMMARY JUDGMENT EVIDENCE

Plaintiff began his employment as a police officer with the Marin Community College District Police Department ("MCCD" or "Department") in 1994.  He was promoted to sergeant in 2001.  In December 2005, Plaintiff slipped while at work and broke his arm.  He was provided "light-duty" for a period of time and then returned to full duty employment.  When Plaintiff returned, his workload and the department's staffing shortages took its toll on Plaintiff.   In September 2006, Plaintiff began to experience dizzy spells, headaches, nausea, and shortness of breath.  He sought treatment, took tests, and began medications.  Then, on September 18, 2006, while at work, Plaintiff experienced chest pains and went to the emergency room.  His physicians ultimately concluded that he did not have heart attack, but instead "had a bad esophageal spasm caused by acid reflux."

Immediately following the incident, Plaintiff took a leave from work to address his stress levels.  He "attended an 'Anxiety' class, participated in group therapy, and took prescribed medication." (Dkt. No. 48 ¶ 14.)  He was also referred to a workers compensation psychologist, Dr. Goldenstein.  (*Id.* ¶ 15.)  In November 2006, Dr. Goldstein advised Plaintiff to return to work two days a week, and continue his treatment three days a week.  Plaintiff's doctors cleared Plaintiff to return to work on a part-time basis, continuing treatment for his stress during the time Plaintiff was not at work.  (*Id.* ¶ 16.)  The following month Dr. Goldstein gave Plaintiff a full release for return to duty.  (*Id.* ¶ 17.)  Defendant, however, required Plaintiff to undergo a psychological fitness-for-duty examination ("FFDE") before he could return to work.  Mark Clementi, Ph.D, conducted the FFDE on January 5, 2007.  Dr. Clementi is a licensed clinical psychologist specializing in public safety, that is, his practice is devoted to police, fire and probation departments.  (Dkt. No. 64, Ex. E (Deposition of Dr. Clementi) at 11.)  Dr. Clementi found Plaintiff was psychologically fit to return to

United States District Court
Northern District of California

1    duty; indeed, that he was free of any psychological disorder at that time.  (Dkt. No. 64, Ex. F.)

2    Although Plaintiff was cleared for work in early January, he did not begin working until April 2007.[1]

3    Between April 2007 and September 2009, Plaintiff performed the duties as the sole sergeant for the

4    Department.  Plaintiff continued to receive positive evaluations from Chief of Police Charles Lacy,

5    as he had before his stress leave.

6          In connection with his 2006-2007 stress leave, Plaintiff filed a workers' compensation claim.

7    As part of the workers' compensation process, on August 14, 2007, Plaintiff received a

8    "comprehensive medical-legal re-evaluation psychiatric disability evaluation" by Israel Rosales,

9    PhD.  Dr. Rosales found that Plaintiff suffered from Generalized Anxiety Disorder ("GAD"), which

10   Dr. Rosales classified as a "permanent psychological impairment" that was industrially related.

11   (Dkt. No. 48, Ex. 1 at 17-19.)  Dr. Rosales also found that Plaintiff could return to work without

12   restrictions, except that he needed to work with the Chief to clarify his work duties and limit his

13   overtime.  (*Id.* at 21.)  Plaintiff settled his workers' compensation action September 2009.  The

14   settlement agreed to a permanent disability of 38.5% for his GERD, psyche, and high blood pressure

15   combined.  (*Id.* ¶ 20, Ex. 2.)

16         In October or November 2009, MCCD Human Resources Dean Linda Beam was notified of

17   Plaintiff's settlement and the permanent disability finding.  Ms. Beam in turn notified Chief Lacy,

18   who ordered Plaintiff to undergo an FFDE.  Plaintiff was asked to surrender his firearm pending the

19   evaluation, and he did so.  On or around November 4, 2009, Dr. Clementi again gave Plaintiff a

20   battery of psychological inventories and conducted a face-to-face clinical interview, as he had in

21   2007.  As part of his evaluation of Plaintiff, Dr. Clementi spoke with Plaintiff's treating psychologist

22   since 2007, Mark Kamena, PhD, who confirmed Dr. Clementi's concern that Plaintiff was having

23   difficulty functioning at work because of his stress and anxiety issues.  (Dkt. No. 64, Ex. E at 38:17-

24   39:19; Dkt. No. 65, Ex. H, (Deposition of Dr. Kamena) at 45:14-46:8.)

25

26

27

28         _____

           [1] The parties' briefs do not explain why he did not resume work until April 2007 and at oral
     argument they were unable to point to any record evidence as to the reason for the delay.

United States District Court
Northern District of California

On November 5, 2009, Dr. Clementi issued his report to the Department, advising that in his opinion Plaintiff was not psychologically fit for duty as a police officer.  ( Dkt. No. 61 at 6.)  His report states:

> [Kesecker] is experiencing significant psychological distress and is not capable of performing his duties with the police department at a satisfactory level.  His symptoms of stress and anxiety are clinically significant and likely have been consistent over the past several years.  In my professional opinion, it is likely that he will continue to experience psychological distress for the foreseeable future and it is unlikely that he will be able to return to duty in the near term.  I would recommend that he continue in treatment with his psychologist and treating physicians.

(Dkt. No. 42, Ex. I at 2.)  Based on this report, Chief Lacy determined that Plaintiff could not return to work and carry a firearm.  (Dkt. No. 39, Ex. E (Lacy Deposition) at 113.)

In November and December 2009, Plaintiff met with Chief Lacy and Ms. Beam on approximately three occasions to discuss his future with the MCCD.  At the initial meeting, on November 10, 2009, Lacy and Beam notified Plaintiff that Dr. Clementi had found him not fit for duty, and that the District needed to determine their next step.  (Dkt. No. 48 ¶ 25.)  Beam also stated that she was not sure if Plaintiff could still serve as a police officer, but that he probably could not continue working at the college as an officer.  (*Id.*)  Plaintiff asked for a copy of Dr. Clementi's report, and Beam responded that she would try.  Plaintiff also asked about the possibility of continuing to work without a gun, and mentioned the possibility of working as a Health and Safety Coordinator and an Evening Campus Supervisor.  He was told such positions were not possible.  (Dkt. No. 37, Ex. B (Kesecker Depo.) at 171-72.))  They did provide Plaintiff with a list of available college positions, but Plaintiff responded that he did not believe he was qualified for any of them.  (*Id.* at 172; Dkt. No. 38, Ex. C (Beam Depo.) at 145-46.)  Finally, Beam and Lacy both suggested Plaintiff apply for disability retirement. (Dkt. No. 48 ¶ 25.)

On November 15, 2009, Beam and Lacy initiated another meeting with Plaintiff.  The "bulk" of the meeting involved Beam and Lacy asking Plaintiff about his completion of the disability retirement paperwork.  (*Id.* ¶ 26.)  They also discussed Plaintiff's suggested reassignments first presented at the initial meeting.  (*Id.*)

Finally, on November 30, 2009, Chief Lacy again asked whether Plaintiff had completed his retirement papers.  He asked Plaintiff to send him a memorandum by the end of the day about whether Plaintiff wished to retire.  Plaintiff complied, and sent the Chief a memo stating that it is his "intention to retire, after I utilize and exhaust my vacation and compensatory time."  (*Id.* at Ex. 3.)

Plaintiff changed his mind about retirement, and on January 11, 2010 he personally delivered a memo to Beam which stated:

> After reaching and speaking with Cal PERS and my attorney, I wish to return to work at this time and not complete service retirement papers. . . . I can report tomorrow.

> As I was uninformed and misinformed during my previous actions, I have been told by my attorney to have you contact him if you have any questions.

(*Id.* ¶ 31, Ex. 4.)  Plaintiff wrote further: "Please contact me as soon as possible as to my work schedule."  (*Id.* at Ex. 4.)  According to Beam, she told Plaintiff he could not report back to work because the FFDE indicated that he was not psychologically fit for duty.  (Dkt. No. 38, Ex. C at 160.)  During this meeting there was no discussion of any possible accommodations.  (Dkt. No. 48 ¶ 30.)

On March 18, 2010, Plaintiff filed a grievance, requesting that he be returned to his job immediately.  (*Id.* at Ex. 6.)  MCCD denied the grievance, citing the results of the 2009 FFDE; specifically, that the 2009 FFDE "deemed Mr. Kesecker unable to perform his duties as a sworn police officer."  (Dkt. No. 44, Ex. N.)  Plaintiff filed two more grievances, which MCCD denied.  (Dkt. No. 48 ¶¶ 36-44.)  For the "level-3 grievance," Plaintiff and his SEIU Union Representative met with College President Fran White and Beam on May 26, 2010.  (*Id.* ¶ 42.)  Plaintiff asked that he be allowed to return to work, but the participants "did not discuss accommodations, other possible jobs, or obtaining another fitness for duty examination."  (*Id.* ¶ 43.)

Plaintiff retired from MCCD effective September 2010, following a settlement of Plaintiff's workers' compensation case.[2]  (*Id.* ¶ 46.)  He agreed to retire because more than 10 months had elapsed and he had not received any accommodation; he felt he had no choice but to accept the

---

[2]  Although not made clear by the record, it appears that Plaintiff's workers' compensation case is distinct from the grievance proceedings and his earlier workers' compensation claim.

United States District Court
Northern District of California

1   settlement.  (*Id.*)  Up until that time, Plaintiff took accumulated leave time and was also on paid

2   administrative leave.  (*Id.* ¶ 38.)  Following his retirement, Plaintiff applied for disability retirement.

3   In connection with Plaintiff's application, his physician submitted a report indicating that Plaintiff

4   had "anxiety/stress/acid reflux/and elevated blood pressure and headaches" that rendered him unable

5   to work.  (Dkt. No. 43, Ex. O.)  In particular, the physician certified that Plaintiff was currently

6   "substantially incapacitated from performance of the usual duties of the position for current

7   employment."  (*Id.*)  The physician's report identifies September 9, 2010 as the date that Plaintiff

8   was unable to perform his job duties.  (*Id.*)

9        Plaintiff contends that upon his retirement Defendant was required to issue him an

10  identification card that carries an endorsement approving his carrying of a concealed weapon.

11  Because Defendant refused, in October and November 2010, Plaintiff was examined by Harvey A.

12  Lerchin M.D. and Corey S. Bercun, Ph.D., both of whom found Plaintiff mentally fit to carry a

13  concealed weapon. (Dkt. No. 53, Exs. 12, 13.)

14                          **SUMMARY JUDGMENT STANDARD**

15       Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

16  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

17  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

18  P. 56(c).  "A moving party without the ultimate burden of persuasion at trial—usually, but not

19  always, a defendant—has both the initial burden of production and the ultimate burden of persuasion

20  on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210

21  F.3d 1099, 1102 (9th Cir. 2000).  "[T]he moving party must either produce evidence negating an

22  essential element of the nonmoving party's claim or defense or show that the nonmoving party does

23  not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial . .

24  . and persuade the court that there is no genuine issue of material fact."  *Id.*

25       If the "moving party carries its burden of production, the nonmoving party must produce

26  evidence to support its claim or defense."  *Id.* at 1103.  If the nonmoving party fails to do so, "the

27  moving party wins the motion for summary judgment."  *Id.*  "But if the nonmoving party produces

28  enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."

*Id.* In deciding whether there exist genuine issues of material fact, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). Where, as here, the parties have filed cross-motions for summary judgment, the Court must independently evaluate each motion for factual disputes even though both parties are asserting that there are no genuine disputes of fact. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Further, in deciding each motion, the Court should consider all of the evidence cited in connection with both motions. *Id.* at 1136-37.

## DISCUSSION

**A.   Failure to Provide Reasonable Accommodation (Second Claim)**

Under FEHA, employers have an affirmative duty to make reasonable accommodations for a known disability of an employee, provided the accommodation does not create an undue hardship to the employer's operations. Cal. Gov. Code § 12940(m).[3] A "reasonable accommodation" means an accommodation that "enables the employee to perform the essential functions of the job held or desired." *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 973 (2008). In a lawsuit alleging a violation of section 12940(m), the burden of proving the availability of a reasonable accommodation, including the employee's ability to perform all the essential functions of the job with the accommodation, falls on the employee/plaintiff. *Id.* at 977. A "reasonable accommodation" includes:

> (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.

> (2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

Cal. Gov. Code § 12926(o).

---

[3]  Section 12940(m) gives rise to a separate cause of action from FEHA's employment discrimination provision Section 12940(a). *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000) ("Under the express provisions of the FEHA, the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself.").

United States District Court
Northern District of California

The ADA similarly protects only "qualified individuals" from disability discrimination. 42 U.S.C. § 12112(a); *Kennedy v. Applause*, 90 F.3d 1477, 1480-81 (9th Cir. 1996). 42 U.S.C. § 12111(8) defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." The ADA's definition of reasonable accommodation is defined almost identically as under FEHA. *See* 42 U.S.C. § 12111(9).[4] Federal law includes the word "appropriate" before "adjustment." *Id.* As under FEHA, under the ADA the employee bears "the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006); *see also Memmber v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999) ("[B]ecause [the plaintiff] bears the burden of establishing an ADA violation, [the plaintiff] must establish the existence of specific reasonable accommodations that [the employer] failed to provide."). However, to defeat summary judgment, the plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, (2002).

An employer is not required to implement the best accommodation or the specific accommodation that a disabled employee seeks. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 228 (1999). The law requires only that the accommodation chosen be "reasonable." Cal. Gov. Code §§ 12940(a), (m). The obligation to reassign an employee who cannot otherwise be accommodated "does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." *Hastings v. Dept. of Corrs.*,

---

[4] The ADA, unlike FEHA, does not provide a separate cause of action for failure to provide reasonable accommodations. Rather, under the ADA a defendant's "failure to provide reasonable accommodation to 'an otherwise qualified individual with a disability' constitutes discrimination." *Kaplan v. City of Las Vegas*, 323 F.3d 1226, 1232 (9th Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)). Therefore, whether Defendant failed to provide a reasonable accommodation pursuant to the ADA may serve as the basis for Plaintiff's ADA discrimination claim, but it does not support a cause of action separate from his discrimination claim.

United States District Court
Northern District of California

1    110 Cal. App. 4th 963, 973 (2003).  An employer does have a duty to reassign a disabled employee,

2    however, "if an already funded, vacant position at the same level exists."  *Id.* at 972-73.

3        Plaintiff argues that Defendant failed to accommodate his psychological disability by 1) not

4    providing a leave of absence and a new fitness for duty examination, 2) failing to allow him to do

5    only administrative tasks without his gun for a finite period of time and a new FFDE, and 3) failing

6    to provide a permanent, non-police officer position within the Department.  (Dkt. No. 47 at 16, 21.)

7        **1.    Leave of absence and a new FFDE**

8        There is no dispute that Plaintiff's diagnosed general anxiety disorder may constitute a

9    disability covered by FEHA and the ADA; the question here is whether a reasonable trier of fact

10   could find that Plaintiff's identified accommodation—a leave of absence and a new FFDE—was

11   reasonable, at least on its face, under the circumstances of this case.

12       Plaintiff highlights that by exhausting his sick and vacation leave he remained employed with

13   MCCD—though not working—from November 2009 to September 2010.  Moreover, Defendant did

14   not permanently fill his position during that period.  Since he was in effect allowed a leave of

15   absence, Defendant "simply could have scheduled him for another [FFDE] at any point" during that

16   "leave."  (Dkt. No. 47 at 16.)  In other words, rather than insisting that Plaintiff retire, Defendant

17   could have granted him a reasonable leave of absence and a further FFDE to determine if he had

18   improved enough to be found fit for duty.

19       Defendant contends that such an accommodation was unreasonable as a matter of law

20   because Plaintiff's mental condition was expected to keep him out of work indefinitely.  Defendant

21   points to Dr. Clementi's 2009 report, which states that Plaintiff's condition was not likely to improve

22   "in the foreseeable future."  Specifically, Dr. Clementi wrote:

> [Kesecker's] symptoms of stress and anxiety are clinically significant and likely have
> been consistent *over the past several years*.  In my professional opinion, it is likely that
> he will continue to experience psychological distress *for the foreseeable future* and it is
> unlikely that he will be able to return to duty *in the near term*.  I would recommend that
> he continue in treatment with his psychologist and treating physicians.

23

24

25

26

27

28

United States District Court
Northern District of California

1  (Dkt. No. 33, Ex. I at 2 (emphasis added).)  Dr. Clementi's report in and of itself, however, is

2  insufficient to compel a finding that a finite leave of absence and a new FFDE was not a reasonable

3  accommodation as a matter of law.

4      "[A] finite leave can be a reasonable accommodation . . . provided it is likely that at the end

5  of the leave, the employee would be able to perform his or her duties."  *Hanson*, 74 Cal. App. 4th at

6  226; *see also Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989) ("As long as a

7  reasonable accommodation available to the employer could have plausibly enabled a handicapped

8  employee to adequately perform his job, an employer is liable for failing to attempt that

9  accommodation."); *Humphrey v. Memorial Hosps. Ass'n.*, 239 F.3d 1128, 1136 (9th Cir. 2001)

10  (holding that a doctor's statements that a plaintiff's mental condition was treatable and that "she may

11  have to take some time off until we can get the symptoms better under control" are sufficient to

12  satisfy the minimal requirement that a leave of absence could plausibly have enabled plaintiff

13  adequately to perform her job).  However, reasonable accommodation does not require an employer

14  to wait indefinitely for an employee's medical condition to improve to the point where he can

15  resume working.  *Dep't of Fair Emp't and Hous. v. Lucent Techs., Inc.*, 2008 WL 5157710 *13

16  (N.D. Cal. Dec. 8, 2008) ("*Lucent*"); *see also Hanson*, 74 Cal. App. 4th at 226-27 ("Reasonable

17  accommodation does not require the employer to wait indefinitely for an employee's medical

18  condition to be corrected.") (internal quotation marks and citation omitted); *see also Jensen*, 85 Cal.

19  App. 4th at 263-64 ("Holding a job open for a disabled employee who needs time to recuperate or

20  heal is in itself a form of reasonable accommodation and may be all that is required where it appears

21  likely that the employee will be able to return to an existing position *at some time in the foreseeable

22  future*") (emphasis added).

23      Defendant has not cited any case, and the Court is aware of none, in which an employer was

24  excused from providing a finite leave of absence at the outset because the employee's disability,

25  while not permanent, was unlikely to allow the employee to return to work "in the near term."  In

26  *Hanson*, the plaintiff was a meatcutter who suffered injuries to his hands, wrist, and back that made

27  it difficult from him to carry out the functions of his job.  74 Cal. App. 4th at 220.  Hanson was

28  given 9 months of leave pursuant to a CBA, and, when his condition failed to improve, his employer

United States District Court
Northern District of California

1    provided an additional 7 months of leave.  *Id.*  When Hanson's doctor's eventually cleared him to

2    work, however, the clearance was conditional on restrictions to Hanson's work responsibilities with

3    no clear indication as to when, or if, the restrictions would be lifted.  *Id.* at 220, 222.  At this point,

4    Hanson's employer determined that he could no longer work as a meatcutter.  *Id.* at 222.  The court

5    held that the employer's allowance of a 7-month leave beyond the 9-month CBA period constituted

6    a reasonable accommodation, notwithstanding that the leave did not continue until Hanson was able

7    to do his job without restrictions.  *Id.* at 226-27.  Defendant's reliance on *Hanson*—specifically, that

8    "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's

9    medical condition to be corrected," *id.*—is unavailing because unlike in *Hanson*, Defendant never

10   allowed Plaintiff any leave with the goal of returning Plaintiff to work at the conclusion of the leave.

11   Instead, based solely on Dr. Clementi's report, and without any further investigation into what Dr.

12   Clementi meant by "in the near term," Defendant unilaterally determined that any leave of absence

13   was unreasonable.  *Hanson* cannot be read as holding as a matter of law that an employer can forgo

14   providing any leave of absence based on an initial conclusion that an employee's condition is

15   unlikely to improve "in the near term."

16        In *Lucent*, the court rejected an employee's argument that his employer should have granted

17   an extension of a one-year leave of absence, reasoning that during the entire one-year period the

18   employee "never indicated to Lucent a desire to return to work and never requested an

19   accommodation."  2008 WL 5157710 *13.  The plaintiff, Carauddo, was allowed the one-year leave

20   pursuant to company policy; after the one-year, however, the company terminated Carauddo's

21   employment.  *Id.* at *7.  Carauddo argued that he would not have required an indefinite leave, and an

22   extension of his leave would have been reasonable because he was cleared to return to work without

23   restrictions within six weeks of his termination.  *Id.* at *13.  The court was unpersuaded, citing

24   *Hanson* for the proposition that an employer need not wait indefinitely for an employee's condition

25   to improve.  *Id.*  The court further noted that Carraudo and Lucent engaged in considerable

26   communication during the leave regarding Carraudo's condition; further, Lucent communicated

27   directly with Carraudo's physicians during the one-year leave in order to ascertain his physical

28   limitations.  *Id.*  Unlike in *Lucent*, Defendant here did not provide any leave for Plaintiff that was

United States District Court
Northern District of California

1    meant to provide time for Plaintiff to recover and return to work; instead, Defendant simply

2    concluded any leave time would have been ineffective.

3         While Dr. Clementi's report alone is not sufficient to find that a finite leave with a further

4    FFDE was an unreasonable accommodation as a matter of law, Plaintiff still bears the burden of

5    proving that it was likely or plausible that Plaintiff could return to work with the accommodation.

6    *See Hanson*, 74 Cal. App. 4th at 226 ("[A] finite leave can be a reasonable accommodation . . .

7    provided it is likely that at the end of the leave, the employee would be able to perform his or her

8    duties."); *see also Kimbro*, 889 F.2d at 879 ("As long as a reasonable accommodation available to

9    the employer could have plausibly enabled a handicapped employee to adequately perform his job,

10   an employer is liable for failing to attempt that accommodation."); *Cripe v. City of San Jose*, 261

11   F.3d 877, 884 (9th Cir. 2001) ("If a disabled person cannot perform a job's 'essential functions'

12   (even with a reasonable accommodation), then the ADA's employment protections do not apply.");

13   *Kennedy*, 90 F.3d at 1480-81 ("Only a 'qualified individual with a disability' may state a claim for

14   discrimination.").

15        Defendant argues that nothing in the record disputes Dr. Clementi's determination in

16   November 2009 that Plaintiff was not fit for duty and therefore no reasonable trier of fact could find

17   that Plaintiff would have been qualified to work as a police officer following a finite leave of

18   absence.  Defendant is partially correct: there is no psychological medical report addressing the

19   relevant time frame—November 2009 through September 2010—opining that following a finite

20   leave of absence Plaintiff would likely be psychologically fit to work as a police officer.  But Dr.

21   Clementi also did not opine that Plaintiff would not be mentally fit following a leave of absence and

22   continuing treatment; indeed, he testified that he did not make a determination that Plaintiff could

23   never again work as a police officer.  (Dkt. No. 49, Ex. 5 (Clementi Depo) 42:6-21.)

24        Drawing all reasonable inferences in Plaintiff's favor, evidence outside of a second medical

25   professional opinion supports a finding that Plaintiff likely would have been fit for duty as a police

26   officer after a finite leave of absence.  First, in 2007 Dr. Clementi found that Plaintiff could return to

27   work after only three months off due to stress.  Second, the 2009 FFDE was not initiated because of

28   any concerns with Plaintiff's work performance, but rather because of a medical evaluation

United States District Court
Northern District of California

1  conducted in 2007. Plaintiff in fact consistently received positive performance evaluations.  Third,

2  Plaintiff did not advise Defendant he was disabled; rather, Defendant unilaterally concluded that

3  Plaintiff could not return to work based solely upon Dr. Clementi's written report.  Plaintiff insisted

4  that he could return to work and repeatedly asked that he be placed in the work schedule.  Finally, in

5  October and November 2009, two different doctors found Plaintiff did not pose a risk to carry

6  concealed weapons.

7  The evidence also supports a finding, however, that Plaintiff would still not be qualified to

8  work as a police officer following a finite leave of absence.  Among other evidence, in 2011, and in

9  connection with his efforts to obtain disability retirement, Plaintiff's own physician opined that

10  Plaintiff could not work as of September 2010.  Further, a trier of fact could find that Plaintiff's

11  condition deteriorated upon his return to work in 2007, despite being away from work for the

12  previous seven months.  *See Kimbro*, 889 F.2d at 879 n.10  ("[T]he fact that an accommodation has

13  been attempted and was unsuccessful is a relevant consideration for the factfinder and may in fact

14  prove dispositive in determining whether failure to permit subsequent leave constituted failure to

15  make a reasonable accommodation.").  Dr. Kamena, Plaintiff's treating psychologist since July 17,

16  2007, testified that Plaintiff's test results indicated the severity of his anxiety symptoms worsened as

17  time went on.[5]  (Dkt. No. 41, Ex. H at 42:1-10.)  As the Ninth Circuit has stated in the context of an

18  ADA suit, "[p]olice officers are likely to encounter extremely stressful and dangerous situations

19  during the course of their work."  *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146–47 (9th Cir.

20  2010).  A reasonable trier of fact could find that Defendant was justified in concluding that due to

21  Plaintiff's psychological impairment he could not work as a police officer.

22

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24  [5]  Plaintiff objects to Dr. Kamena's deposition testimony, arguing that it is not relevant under
Rule 402 and 403 of the Federal Rules of Evidence.  (Dkt. No. 52 at 25.)  Plaintiff contends that

25  since neither Lacy nor Beam spoke with Dr. Kamena, his opinions could not have influenced their
understanding of Plaintiff's condition.  This argument, however, ignores that Dr. Kamena spoke with

26  Dr. Clementi, whose 2009 FFDE incorporates information supplied by Dr. Kamena.  More
importantly, the issue is whether the evidence supports a finding that Plaintiff would, in fact, have

27  been psychologically fit for duty following a leave of (some unspecified) limited duration.  His
treating psychologist's opinion as to Plaintiff's condition is relevant to this inquiry. The objection is

28  accordingly overruled.

Plaintiff's reliance on *Brownfield* as compelling summary judgment in his favor is unpersuasive. There, Brownfield, a police officer, was found unfit for duty based on a permanent psychological disability.  Brownfield subsequently obtained his own second opinion.  612 F.3d at 1145.  Brownfield's physician agreed that he was currently unfit, but believed his condition was amenable to treatment.  *Id.*  After a few months of treatment, the police department scheduled another FFDE with a third doctor.  *Id.*  Brownfield failed to attend that FFDE and was eventually terminated.  *Id.*  Brownfield filed suit alleging that the police department violated the ADA by requiring Brownfield to submit to a FFDE in the first place.  The Ninth Circuit disagreed and held that "[w]hen a police department has good reason to doubt an officer's ability to respond to these situations in an appropriate manner, an FFDE is consistent with the ADA."  *Id.* at 1147.  Thus, *Brownfield* did not decide whether the entire process afforded to the plaintiff was adequate under the ADA; rather, the court merely held that the police department did not violate the ADA by ordering Brownfield to take the initial FFDE—an issue that is not in dispute here.  It is worth noting, however, that Brownfield obtained a second opinion as a means to challenge the initial FFDE finding.  Here, Plaintiff took no such action.

The question of reasonable accommodation is ordinarily a question of fact.  *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010).  It is a disputed question of fact here as well.

### 2.   Temporary reassignment to an administrative position within the Department and a new FFDE

For the same reason there is a dispute of fact as to whether a finite leave of absence was a reasonable accommodation, there is a dispute as to whether a temporary, finite reassignment was an available reasonable accommodation.  Defendant does not contend that such a reassignment would pose a hardship, at least not for purposes of summary judgment.  Instead, as with the leave of absence, Defendant argues that it would have been futile in light of Dr. Clementi's report.

### 3.   Permanent positions within MCCD

Plaintiff argues that another reasonable accommodation would have been for Defendant to allow him to take on the duties of the health and safety coordinator, or hire him as the evening

United States District Court
Northern District of California

1  campus supervisor.  (*See* Dkt. No. 47 at 8, 21.)  Plaintiff proposed both options to Lacy and Beam at

2  one of their meetings following the 2009 FFDE, but both requests were denied.  Defendant argues

3  that the law does not require it to provide Plaintiff's requested accommodation.  The Court agrees.

4       Regarding the health and safety coordinator position, there is no dispute that this position has

5  not existed as a funded position at any time after the 2009 FFDE and prior to Plaintiff's retirement.

6  Neither the ADA nor FEHA require employers to create positions or fund unfunded positions in

7  order to reassign disabled employees.  *See Hastings*, 110 Cal. App. 4th at 972-73 (stating that FEHA

8  does not require an employer to reassign a disabled employee to an unfunded position or create a

9  new position); *Willis v. Pacific Mar. Ass'n*, 162 F.3d 561, 567 (9th Cir. 1998) ("In order for

10  reassignment to a vacant position to be reasonable [under the ADA], an existing position must be

11  vacant: there is no duty to create a new position for the disabled employee.").  While the health and

12  safety coordinator position was vacant, there is no dispute that Defendant did not have the authority

13  to hire anyone for that position since the position was unfunded.  Similarly, Plaintiff does not dispute

14  Defendant's assertion that the evening campus supervisor position did not exist until August 2011,

15  almost a year after Plaintiff retired.  (*See* Dkt. No. 69 at 6.)

16       Because creating a permanent position for a disabled employee is not a reasonable

17  accommodation as a matter of law, Defendant's Motion for Summary Judgment on the reasonable

18  accommodation claim is GRANTED to the extent the claim is based on Defendant's failure to

19  provide Plaintiff with such positions.

20  **B.       Failure to Engage in the Interactive Process (Third Claim)**

21       "[T]he interactive process is a mandatory rather than a permissive obligation on the part of

22  employers under the ADA and . . . is triggered by an employee or an employee's representative

23  giving notice of the employee's disability and the desire for accommodation."  *Barnett v. U.S. Air,*

24  *Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *overruled on other grounds*, *U.S. Airways, Inc.*

25  *v. Barnett*, 535 U.S. 391 (2002).  Under California law, it is unlawful for an employer "to fail to

26  engage in a timely, good faith, interactive process with an employee to determine effective

27  reasonable accommodations, if any, in response to a request for reasonable accommodation by an

28  employee or applicant with a known physical or mental disability."  Cal. Gov. Code § 12940(n).

"[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees."  *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950–51 (1997).

To prevail on a claim under Section 12940(n) for failure to engage in the interactive process, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred."  *Scotch v. Art Inst. of Cal.-Orange County, Inc.*, 173 Cal. App. 4th 986, 1018 (2009).  Similarly, under the ADA, an employer is not liable for failing to engage in the interactive process in good faith if a reasonable accommodation was not possible.  *See Barnett*, 228 F.3d at 1117.  However, under federal law, the burden to show no available reasonable accommodation is on the employer if the employer failed to engage in the interactive process in good faith.  *See Morton v. United Parcel Serv.*, Inc., 272 F.3d 1249, 1256 (9th Cir. 2001) ("The question whether this failure should be excused because there would in any event have been no reasonable accommodation available is one as to which the employer, not the employee, should bear the burden of persuasion throughout the litigation."), *overruled on other grounds*, *Bates v. United Parcel Serv.*, *Inc.*, 511 F.3d 974 (9th Cir. 2007).

In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000).  "[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.  If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one."  *Id.* (quotation and citations omitted).  While the employee is typically required "to tender a specific request for a necessary accommodation," *Spitzer*, 80 Cal. App. 4th at 1384, the burden is not entirely on the employee, *Jensen*, 85 Cal. App. 4th at 261–62.

> The interactive process is at the heart of the ADA's process and essential to accomplishing its goals . . . .  Employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations

16

which employers have.  Putting the entire burden on the employee to identify a reasonable accommodation risks shutting out many workers simply because they do not have the superior knowledge of the workplace that the employer has."

*Id.* at 261–62 (quoting *Barnett*, 228 F.3d at 1113).  To that end, courts have held that "[t]he employee must initiate the process unless the disability and resulting limitations are obvious." *Scotch*, 173 Cal. App. 4th at 1013.

Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous.  *Id.*  "[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed.  This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work . . . ." *Humphrey*, 239 F.3d at 1138.

Both employer and employee have the obligation "to keep communications open" and neither has "a right to obstruct the process." *Jensen*, 85 Cal. App. 4th at 266.  "Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party.  Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006).

Plaintiff argues that Defendant failed to engage in the interactive process in good faith throughout the time following Plaintiff's 2009 FFDE.  Because the Court finds that there is a triable issue as to whether Defendant fulfilled its duty to engage in the interactive process, the Court denies summary judgment to either party on this issue.

At the initial meeting, on November 10, 2009, Lacy and Beam notified Plaintiff that Dr. Clementi had found him not fit for duty, and that the District needed to determine their next step. (Dkt. No. 48 ¶ 25.)  Beam also stated that she was not sure if Plaintiff could still serve as a police officer, but that he probably could not continue working at the college as an officer.  (*Id.*)  Plaintiff

17

asked for a copy of Dr. Clementi's report, and Beam responded that she would try.  (*Id.*).[6]  While Defendant properly initiated a dialogue following the receipt of the 2009 FFDE, the process was flawed at the outset by Defendant's failure to provide Plaintiff with a copy of the 2009 FFDE, despite Plaintiff's request for the report.[7]  The significance of this document underscores the novelty of this case.

In almost all disability discrimination cases, the relevant medical information is in the hands of the employee; thus, it is generally the responsibility of the employee to inform his employer of his disability, its restrictions, and expected duration.  *See Jensen*, 85 Cal. App. 4th at 265 ("It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee.").  Here, however, the *employer* possessed crucial medical information that was unavailable to the employee; indeed, the employer advised the employee that the employee was disabled from working based on this information.  Specifically, Plaintiff did not know Dr. Clementi's opinion regarding the length of time his disability would be expected to keep him from working.  Although Dr. Clementi wrote that Plaintiff's condition would not improve in "the near term," he did not opine on whether the condition was permanent or on what "near term" meant.  Without this piece of information, a reasonable jury could find that Plaintiff was unable to meaningfully engage in a dialogue with his employer and pursue an accommodation—a temporary leave or temporary reassignment and a new FFDE—that may have returned him to his job as a police officer.  *See Gelfo*, 140 Cal. App. 4th at 62 n.22 ("Each party must . . .  make available to the other information which is available, or more accessible, to one party.").

The content of the 2009 FFDE takes on added significance considering that its wording conveying a seemingly indefinite term of unfitness for duty was purportedly the reason for

---

[6]  Although not challenged by Defendant, the Court notes that the record suggests a factual dispute as to whether Plaintiff requested the report.  (*See* Dkt. No. 49, Ex. 2, Beam Decl., 141:12-13 ("Quite frankly, he didn't ask for [the report] either during our dialogue.").)

[7]  Although Plaintiff was eventually allowed to see Dr. Clementi's report, this did not occur until September 2, 2010—ten months after the initial November 2009 discussions.  Plaintiff states that by that time he "felt hopeless and . . . that [he] had no choice but to accept the [workers' compensation] settlement and retire."  (Dkt. No. 48 ¶ 46.)

Defendant's conclusion that Plaintiff could no longer be a police officer for MCCD.  It is undisputed that Defendant never contacted Dr. Clementi to inquire if the terms "foreseeable future" and "near term" had a specific meaning and whether a particular length of time away from work and in treatment would possibly allow Plaintiff to return to duty.  Plaintiff, if his request for the report was timely granted,[8] could have pressed the issue and with further information possibly countered Defendant's conclusion that Plaintiff could no longer be a police officer for MCCD.  However, Defendant's failure to share the report at least raises a factual dispute as to whether Defendant hampered this dialogue to the point that it caused a breakdown in the interactive process.  *See Nadaf-Rahrov*, 166 Cal. App. 4th at 989 ("[A] jury could find that [Neiman Marcus] . . . caused a breakdown in the interactive process . . . because it was unreasonable for Neiman Marcus to determine unilaterally that Nadaf–Rahrov could not perform any available vacant position and would not be able to do so in the foreseeable future, Neiman Marcus needed to engage in further discussion with Nadaf–Rahrov before concluding that no reasonable accommodation was possible.").

Defendant argues that even without the report, Plaintiff was sufficiently apprised of his medical condition to meaningfully engage in the interactive process.  While Plaintiff certainly was aware of his mental condition and had been attempting to manage and improve his disability for several years prior to the unfitness for duty finding, that fact does not help Plaintiff become aware of Dr. Clementi's specific findings and the reason Defendant concluded Plaintiff could no longer work as a police officer even with an accommodation.  Moreover, whether Plaintiff was knowledgeable about his mental condition such that Defendant's failure to produce the report did not cause the breakdown in the interactive process is a question for a jury.

Plaintiff also contends that Defendant had a duty, following his January 2010 decision to not retire, to continue the interactive process, and Defendant failed to fulfill that duty.  Plaintiff's argument as to the post-January 2010 timeframe is moot if Defendant is liable for a breakdown in the interactive process in November 2009—if the process has already broken down, there is nothing

---

[8]  Even if Plaintiff did not ask for the report, the Court cannot say as a matter of law that Defendant's failure to produce the report unsolicited, or to at least more fully disclose the report's contents to Plaintiff and the reason for Defendant's conclusion that Plaintiff could not work, did not cause a breakdown in the interactive process.

United States District Court
Northern District of California

1   in the caselaw or statutes to suggest that Defendant would incur additional liability for failing to

2   remedy the breakdown.  The Court therefore declines to parse this claim any further for the purpose

3   of summary judgment.  The failure to engage in the interactive process claim survives.

4   **C.      Discrimination Under the ADA and FEHA (Fifth Claim)**

5          Plaintiff's discrimination claim is based on the same allegations discussed in the two claims

6   above—failure to accommodate and failure to engage in the interactive process.[9]  As the Court has

7   already found that questions of fact remain that preclude a finding of summary judgment on those

8   claims, summary judgment must be denied as to this claim as well, to the extent it is based on the

9   two previously discussed claims.

10         Plaintiff's discrimination claim, however, is also based on the alleged failure of Defendant to

11   provide Plaintiff an endorsement following his retirement that would allow Plaintiff to obtain a

12   concealed weapon permit.  (Dkt. No. 1 at 10, ¶ 52.)  As Defendant points out, when the alleged

13   discriminatory action occurred, Plaintiff was no longer Defendant's employee.  An employer-

14   employee relationship is the basis for FEHA.  *See* Cal. Gov. Code § 12940; *see also Vierria v. Cal.*

15   *Highway Patrol*, 644 F. Supp. 2d 1219, 1244-45 (E.D. Cal. 2009).  Likewise, ADA employment

16   discrimination claims require a showing of an employee-employer relationship.  *See Eisenberg v.*

17   *Permanente Med. Grp.*, 855 F. Supp. 2d 1002, 1010 (N.D. Cal. 2012) (rejecting a plaintiff's ADA

18   employment discrimination claim where plaintiff did not establish an employee-employer

19   relationship).  Because there is no dispute that Plaintiff was no longer an employee of MCCD when

20   it denied his request for a concealed weapon endorsement, Defendant's Motion for Summary

21   Judgment of Plaintiff's discrimination claim is accordingly GRANTED to the extent the claim is

22   based on Defendant's denial of the concealed weapon endorsement.

23   **D.      Retaliation Under FEHA, ADA, and Cal. Labor Code § 132a (First Claim)**

24         Plaintiff alleges that the 2009 FFDE was ordered in retaliation for Plaintiff's pursuit of his

25   2007 worker's compensation claim.  To establish a prima facie case of retaliation under the FEHA, a

26   
        _____

27         [9]  Defendant argues that Plaintiff's Amended Complaint does not incorporate his previous
     claims.  (Dkt. No. 33 at 9-10.)  However, Plaintiff's Amended Complaint states in the first paragraph
28   of his discrimination claim, "Mr. Kesecker incorporates by reference herein the proceeding
     paragraphs of the complaint as though set forth here in full."  (Dkt. No. 1 at 10, ¶ 49.)

plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Scotch*, 173 Cal. App. 4th at 1020.  Under the ADA, an employee's prima facie case of retaliation must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003).  If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Here, there is no evidence that would allow a reasonable jury to conclude that Defendant required Plaintiff to take an FFDE *because of* his workers' compensation filing in 2007.  Rather, Defendant required the 2009 FFDE because it discovered that Plaintiff received a permanent psychological disability diagnosis.  Although Defendant was first made aware of the diagnosis through the worker's compensation settlement process in November 2009, the causal connection between the FFDE and the filing of the claim in 2007 is tenuous at best.

Even if there is a causal link between the two, Defendant has put forward a legitimate reason for ordering the FFDE—the permanent disability finding.  Plaintiff has failed to counter this legitimate reason with any facts showing pretext.  It is undisputed that Plaintiff continued to receive positive performance evaluations following his 2007 workers' compensation filing.  Only after Defendant discovered Plaintiff's disability diagnosis did it require the FFDE.

Because Plaintiff has failed to meet its burden to establish retaliation, Defendant's Motion for Summary Judgment is GRANTED.[10]

---

[10]  Plaintiff's Amended Complaint also appears to base the retaliation claim on California Labor Code § 132a.  However, as Defendant points out, "a claim under Section 132a is only allowable before the Workers Compensation Appeals Board."  *Rund v. Charter Commc'ns, Inc.*, 2007 WL 852035 *10 (E.D. Cal. Mar. 20, 2007).  Plaintiff does not dispute Defendant's assertion.

United States District Court
Northern District of California

**E.      Wrongful Constructive Discharge Under FEHA & ADA (Fourth Claim)**

"[C]onstructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989). Plaintiff's wrongful constructive discharge claim is based on Defendant's alleged failures to provide reasonable accommodations and engage in the interactive process. (Dkt. No. 1 at 9-10, ¶¶ 43-46; Dkt. No. 52 at 24-25.) Because the Court has already found that summary judgment on these claims is not warranted, the Court additionally denies summary judgment on Plaintiff's wrongful constructive discharge claim.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED in its entirety and Defendant's motion for summary judgment is DENIED in part and GRANTED in part. Plaintiff's claims for failure to provide a reasonable accommodation and failure to engage in the interactive process, and discrimination under FEHA and the ADA survive, except that summary judgment is granted on the failure to provide a reasonable accommodation claim to the extent it is based upon Plaintiff working as the unfunded health and safety coordinator or evening campus supervisor. Plaintiff's discrimination and constructive discharge claims also survive, except that summary judgment is granted on the discrimination claim to the extent it is based upon Defendant's failure to provide Plaintiff a concealed weapons endorsement. Summary judgment in favor of Defendant is granted on the retaliation claim.

In order to give the parties the opportunity to incorporate the Court's summary judgment ruling into the pretrial filings, the pretrial conference is continued to Thursday, January 17, 2013 at 2:30 p.m. In addition, the parties should immediately advise the Court if they desire a referral to a magistrate judge for a settlement conference prior to trial.

This Order disposes of Docket Numbers 33 and 46.

1        **IT IS SO ORDERED.**

2    Dated: December 31, 2012

3                                                    _____
                                                     JACQUELINE SCOTT CORLEY
4                                                    UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28